IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PATRICK M. BRENNER, and
LISA M. BRENNER

    Plaintiffs,

v.                                                            Civ. No.

THE BOARD OF COUNTY COMMISSIONERS (COUNCILORS)
FOR THE COUNTY OF LOS ALAMOS;
LOS ALAMOS COUNTY POLICE CHIEF
DINO SGAMBELLONE; LOS ALAMOS COUNTY
POLICE OFFICERS DOE 1 AND 2;
LOS ALAMOS COUNTY COUNCIL MEMBER JAMES CHROBOCINSKI,
LOS ALAMOS COUNTY COUNCIL MEMBER MARY SUSAN O'LEARY
both *individually and in their official capacity.*

    Defendants.

## COMPLAINT DUE TO DEPRIVATION OF CIVIL RIGHTS

Plaintiffs bring this action to recover damages for violations of their civil rights pursuant to 42 U.S.C. 1983 and for retaliation and harassment under the color of law, including malicious prosecution and defamation by Defendants, with the intent to bring harm.

## INTRODUCTION

This case arises from a complaint lodged by Plaintiffs with Los Alamos County, which was filed after a series of events triggered by the exercise of their right to free speech, and a request for public documents.

## PARTIES

1.     Plaintiff Patrick Brenner is a resident of Sandoval County, New Mexico.

2.     Plaintiff Lisa Brenner is a resident of Los Alamos County, New Mexico.

3.     Defendant the Board of County Commissioners for the County of Los Alamos is a governmental unit in the State of New Mexico and properly named pursuant to NMSA § 4-46-1

4. Chief Dino Sgambellone is the Chief of Police for Los Alamos County.

5. Los Alamos County Police Officers Does 1 and 2 are employees of the Los Alamos County Police Department.

6. James Chrobocinski, at the time of the issues raised in this Complaint was a Los Alamos County Council member and is sued in both his individual and in his official capacity acting under color of law. Chrobocinski is also a real estate broker in Los Alamos and is the qualifying broker of the Zia Realty Group.

7. Mary Susan O'Leary is a Los Alamos County Council member and was at the time of the issues raised in this Complaint and is sued in both her individual and in her official capacity acting under color of law.

## JURISDICTION AND VENUE

8. This action arises under 42 U.S.C. § 1983.

9. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the Parties pursuant to 28 U.S.C. §§ 1331 and 1343.

10. The Court has authority to grant the requested relief pursuant to 28 U.S.C. § 1343(a)(1) and (2) and to redress the deprivation under 28 U.S.C. § 1343(a)(3). This Court also has authority to grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11. Venue lies in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

12. Prior to February of 2016, the Los Alamos County through its council proposed issuance of a recreation bond (Rec. Bond) to be voted on through special election. Mary Susan

O'Leary and James Chrobocinski of the Los Alamos City Council were the primary sponsors of the Bond.

13. During a meeting between James Chrobocinski and Patrick Brenner on or about March of 2016, and after the latter announced his candidacy for Council, Chrobocinski told Brenner that if he did not support the Rec. Bond, he would not support Patrick Brenner. Patrick Brenner understood the statement to be a threat, that Chrobocinski would actively engage to prevent Patrick Brenner from receiving funds or support for his council race, as well as taking any possible actions against him to destroy his potential for being elected as a council member.

14. The Rec. Bond was a general obligation bond increasing property taxes, intended to "build or improve" 5 facilities at a cost of more than 20 million dollars.

15. A vote for the Rec. Bond was anticipated for May 23, 2017.

16. Susan O'Leary and James Chrobocinski actively created or assisted in the creation of the Political Action Committee (PAC) called "Los Alamos Futures" (LAF PAC) with the primary purpose of lobbying and advertising for the successful passage of the Rec. Bond. Upon information and belief, the PAC was a single-issue PAC with no other purpose or mission.

17. While the LAF PAC was active, O'Leary served as the Treasurer and Chrobocinski served as the Secretary.

18. Los Alamos County Council also advertised for the Rec. Bond, with expenditures for such publication sponsored or approved in part by O'Leary and Chrobocinski.

19. In April of 2017, Plaintiffs Patrick Brenner and Lisa Brenner founded the Political Action Committee, No Way NM LLC dba A Better Way for LA, specifically to fight one issue, the Rec. Bond special election in Los Alamos County, New Mexico.

20. On May 2, 2017, Lisa Brenner submitted a complaint with the New Mexico Secretary of State against Los Alamos Future PAC, the Pro Rec Bond PAC, alleging violations of campaign practices.

21. Prior to May 4, 2017, Lisa Brenner filed a complaint against the Pro-Rec Bond PAC, Los Alamos Future PAC, for violating local sign codes. (hereinafter the Pro-Rec Bond Complaint). This complaint was separate from the Secretary of State complaint and was filed with Los Alamos County.

22. On May 4, 2017, Patrick Brenner received a call from Anita Barela with the Los Alamos County Community Development office notifying him that the A Better Way For LA PAC's signs were violation of local code.

23. Patrick Brenner informed Ms. Barela that it was impossible for the identified signs to be his or from his organization, as the location she identified was not a location that the PAC had installed signs.

24. Plaintiff Patrick Brenner also had permits for the 4 signs he had placed in town.

25. Mr. Brenner suggested that the signs identified by Barela belonged to Councilor James Chrobocinski, who was actively engaged in supporting the Rec. Bond both as a County Councilor and through the LAF PAC.

26. Upon information and belief that the signs belonged to the LAF PAC run by County Councilors James Chrobocinski and Susan O'Leary, Patrick Brenner notified Councilor Chrobocinski that his signage violated local sign code via text message. Brenner also provided Chrobocinski with photographs of the improperly placed signs.

27. After a brief exchange, with Councilor Chrobocinski's temper flaring, Councilor Chrobocinski demanded that Mr. Brenner not contact him again, despite his position as an elected official.

28. May 2, 2017, Lisa Brenner filed a complaint with the Secretary of State regarding failures of the LAF PAC to comply with disclosure rules.

29. The LAF PAC – O'Leary and Chrobocinski - had printed lobbying and advertising signs through a Texas company that did not include required affiliation disclosures.

30. On May 8, 2017, Lisa Brenner received notification by mail from the New Mexico Secretary of State confirming receipt of her complaint regarding the failure of the LAF PAC to properly disclose affiliation on signage.

31. Lisa Brenner understood from that communication that the New Mexico Secretary of State would inform the LAF PAC of the complaint, which included notice to O'Leary and Chrobocinski.

32. On May 15, 2017, Patrick Brenner, exercising his 1st Amendment rights, sent an email to all 7 members of the Los Alamos County Council, advising that he would work zealously to defeat the Rec Bond.

33. Patrick Benner expected compliance with the City Charter as to his communication, which prevents the disclosure of confidential information outside of compliance with the Inspection of Public Records Act.

34. That same day, May 15, 2017, and only four (4) hours later, Patrick Brenner received a telephone call from Carol Clark, owner of the Los Alamos Daily Post (LADP) which is an online newspaper in Los Alamos.

35. Ms. Clark was seeking his comments on the letter he had sent to the County

Council members. Mr. Brenner had not disclosed the communication to any person outside of the County Council members at that time.

36. Patrick Brenner inquired as to Ms. Clark's source for the email communication regarding the Rec. Bond. Ms. Clark refused to identify which council member provided the email to her. Mr. Brenner requested that the LADP not publish his communication.

37. With the knowledge that his letter would soon be published in the local newspaper and believing that when he originally sent the email that it would remain private, Patrick Brenner began suffering anxiety and emotional distress.

38. The LADP published Mr. Brenner's communication to the County council members in the online newspaper the evening of May 15, 2017, at 7:51 p.m. Many hostile and threatening letters to the editor were posted in response.

39. The communication had only been sent by Patrick Brenner to the 7-member county council, and no one else.

40. For Ms. Clark to have received the email on the day and within hours of when it was sent to the County council, a recipient of the communication either directly or indirectly provided it to the LADP.

41. For a member of the public or LADP to have accessed Mr. Brenner's communication without County Council involvement, individuals would have first needed to know of its existence and then seek its release through an Inspection of Public Records Act (IPRA) request. Such process takes days or weeks, too late to impact the Recreation Bond vote scheduled for May 23, 2017.

42. Defendants released Mr. Brenner's communication outside of permissible processes to impact the Rec. Bond vote.

43. On May 15th, the same day of the email's publication in the LADP, Plaintiffs filed an IPRA request with the County's designated records custodian, seeking each and every email from the County Councilors from May 15, 2017, to determine how this email was released outside of the proper County procedures and policies, making it to the press in a few short hours.

44. The County did not provide records as requested through the IPRA.

45. Also, on May 15, 2017, Chrobocinski admitted to forwarding Patrick Brenner's email communication to a "friend" who is not a member of the Los Alamos county government or council.

46. At 9:04 p.m., nine hours after Patrick Brenner had sent his email communication complaining of ethics violations by council members regarding the Rec Bond, and 1 ½ hours after the letter was published in the LADP, Councilor James Chrobocinski contacted the Los Alamos Police Chief Dino Sgambellone through email, accusing Brenner of being unhinged and asserting that Brenner was a threat to him, and others.

47. Chrobocinski and his friend, Tony Fox, tried to convince the Chief of Police that Brenner had broken some law or "crossed a legal line."

48. As of May 15, 2017, and the improper release and publishing of Mr. Brenner's letter, Plaintiffs have suffered considerable loss of business to their printing and marketing firm.

49. As of May 15, 2017, Plaintiffs have suffered considerable anxiety and emotional distress.

50. County Councilors published Mr. Brenner's email communication to a representative of the LADP for the purpose of and intent to damage his reputation and his business, and to use such improper release to undermine Plaintiff's efforts to defeat the Rec. Bond.

51. The publication of Mr. Brenner's email by County Council member(s) to outside parties and subsequent publishing of Mr. Brenner's email through the LADP was also published on Los Alamos Daily Post's Facebook page. Facebook users from Los Alamos and throughout the country then began posting derogatory, defamatory, hurtful, and negative comments further harming Mr. Brenner, his reputation and his family.

52. On or about May 16, 2017, Chrobocinski disparaged Patrick and Lisa Brenner in a meeting with the League of Women voters, advising of the Secretary of State complaint and also falsely stating that it was the Brenners' printing business that had printed the LAF PAC signs outside of regulatory requirements, which were the subject of the Secretary of State complaint.

53. On May 16, 2017, County Council Chairman David Izraelevitz sent an email to the County Council condemning the actions of the individual councilors that were responsible for releasing Mr. Brenner's email to the press. (Exhibit 1, May 16, 2017 email).

54. Lisa Brenner had prepared a statement to present in-person to the Los Alamos County Council at the May 16, 2017, meeting the day after Patrick Brenner's email was published. Mrs. Brenner sought to attend the County Council meeting to address her government and petition them per the First Amendment to the U.S. Constitution.

55. Mrs. Brenner sought to petition her elected officials to correct the abuse of power and unethical behavior evinced by County Council members publication of her son's communication to the press (and thus subsequent republication) for political purposes.

56. When Mrs. Brenner arrived at the Council chambers for the public meeting, she was confronted outside of chambers by multiple police officers.

57. Police officers, in their official capacity, are not generally present at County Council meetings.

58. Upon information and belief, a County Council member(s) is responsible for seeking the presence of multiple police officers as the County Council meeting.

59. Upon information and belief, the purpose of such Council member in having multiple law enforcement officers present was to chill the Plaintiffs right to petition their government.

60. Ms. Brenner was frightened and intimidated as two Los Alamos police officers stared and her, continually pointed at her and made comments.

61. Because of the intimidation of Los Alamos police officers and the chilling effect of their conduct, Mrs. Brenner left the meeting without addressing the council.

62. Councilor Chrobocinski used Mr. Brenner's email communication, which while strongly worded was not threatening, to create controversy and involve law enforcement at council meetings and to intimidate Plaintiffs.

63. Sheriff Lucero was also present at the May 16, 2017, County Council meeting. He confirmed that evening that the police presence was due to Patrick Brenner's email.

64. During the May 16, 2017, Council meeting, Lisa Brenner stated to Sheriff Lucero that she "felt too intimidated" by the additional police presence and could not stay to deliver her remarks.

65. During the May 16, 2017, Los Alamos County Council Meeting, Councilor James Chrobocinski publicly announced the presence of additional security forces in order to protect the County Council due to Mr. Brenner's letter.

66. Plaintiffs suffered additional loss of business on May 24, 2017, as a company their firm worked with (Victors Lawns) requested Plaintiffs' company logo not be included with any of their signage due to the LADP publications. The company did not return to Plaintiff's business. (Exhibit 2 – email from previous client.)

67. June 2, 2017, Plaintiffs filed a complaint against the County in district court for violation of the Inspection of Public Records Act, for failing to provide records requested on May 15, 2017. (*See* D-132-CV-2017-00062)

68. On June 3, 2017, Lisa Brenner and Patrick Brenner, as well as other family members, attended Mr. Stefan Brenner's high school graduation. Mr. Stefan Brenner is Patrick Brenner's brother and Lisa Brenner's son. At the graduation, a Los Alamos Police officer stood within 10 feet of the family, following Mr. Brenner and his youngest daughter, throughout the event.

69. A female officer with the Los Alamos Police Department followed Patrick Brenner and his young daughter down a stairwell. The officer stared at Patrick Brenner as he tended to his young child. At the time, Patrick Brenner and his daughter were the only individuals present and the officer had no other reasons to be at the location but to observe and intimidate Mr. Brenner.

70. By email communication on May 15, 2017, Councilor Chrobocinski falsely published to the Chief of Police an allegation by Tony Fox (LAF PAC member) that Patrick Brenner "had an outburst at the community development office" to further his campaign to harass Mr. Brenner by using law enforcement.

71. The allegation was false as Mr. Brenner had not been to the Community Development office on the day in question. In fact, Mr. Brenner had not physically been in Los

Alamos for several months at this point in time.

72. At the time Chrobocinski alleged Mr. Brenner had an "outburst" in the Community Development office, Mr. Brenner was actually in attendance at work in Albuquerque.

73. The false allegation by Councilor Chrobocinski was intended to, and was used by him, to convince Chief Sgambellone to harass and retaliate against Mr. Brenner, by urging Mr. Brenner was dangerous.

74. On June 20, 2017, Mr. Brenner filed an official <u>confidential</u> ethics complaint with Denise Cassel, Human Resources Manager for Los Alamos County about the conduct of O'Leary and Chrobocinski, alleging that *they* engaged in an abuse of power, and to damage Patrick Brenner's reputation, engage in conduct to chill Brenner from engaging in political activities and to further their own personal interests.

75. Such complaints are confidential per the County Charter. The complaining parties' identity is required to be maintained confidentially.

76. On June 27, 2017, Mr. Brenner attended a job interview with the Republican Party of New Mexico. During his interview, Mr. Brenner was specifically asked about the article published in the LADP. Mr. Brenner was not offered the position.

77. On July 11, 2017, Mr. Brenner sought legal counsel from Ms. Linda Hemphill, to assist him in curtailing the retaliation and harassment he had been subjected to by the Los Alamos County council members.

78. A cease and desist letter was sent by the Hemphill Firm to all members of County Council and additional parties involved. (Exhibit 3 – Cease and Desist Letter).

79. July 28, 2017, Patrick Brenner received a call from a reporter from the Los Alamos Monitor, seeking his comments as to the confidential ethics complaint Mr. Brenner filed.

80. The Los Alamos Monitor reporter advised that he had received an email notification from Julie Habiger, the public relations officer for Los Alamos County that advised Mr. Brenner had filed a confidential ethics complaint involving the County Council. The reporter disclosed that he had contacted the sender – Julie Habiger - by telephone to verify the communication and its content.

81. Upon and information and belief, Julie Habiger provided confidential information about the Complaint being filed by Patrick Brenner.

82. The Los Alamos Monitor published an article discussing Patrick Brenner's confidential ethics investigation request involving the County Council on July 31, 2017. (Exhibit 4 - Article).

83. On August 1, 2017, Plaintiff Patrick Brenner was interviewed by the contracted ethics complaint investigator, John B. Pound.

84. The LADP published an article discussing Patrick Brenner's confidential ethics investigation on August 3, 2017. (Exhibit 5 - Article). Upon information and belief, additional information about the confidential ethics complaint was released to LADP by County Council members and/or at their direction by a County employee.

85. Councilor Chrobocinski provided false statements to the LADP about Mr. Brenner. In the August 3, 2017, LADP an article about Mr. Brenner's confidential ethics complaint, the LADP included the false statements made by Chrobocinski.

86. In providing false statements to LADP about Mr. Brenner and the confidential ethics complaint, Chrobocinski intended for the statements to be further published.

87. The results of the "confidential" ethics investigation were released outside of normal disclosure of government information standards.

88. On August 30, 2017, the results of the confidential ethics investigation were published in the LADP. County Council members Mary Susan O'Leary and James Chrobocinski provided comments to the LADP about the investigation. (Exhibit 6 - Article).

89. The results of the investigation by John B. Pound were never delivered to Plaintiffs.

90. The Los Alamos County Charter guarantees confidentiality and anonymity in the filing of ethics complaints.

91. Patrick Brenner's physical address was published as part of the results of the investigation in the Los Alamos Daily Post.

92. In October of 2017, Mrs. Brenner had an employment interview in Washington, DC with the Institute of World Politics.

93. During her interview, Mrs. Brenner was asked questions about her involvement in the IPRA litigation relative to the Los Alamos County Council.

94. Patrick Brenner's home was vandalized on January 25, 2018. (Exhibit 7 - photos)

95. Upon information and belief, the release of information about Mr. Brenner by Los Alamos County employees or council members and subsequent publishing of Mr. Brenner's physical address is a cause of the vandalism to his home.

96. In the ongoing litigation relative to Patrick Brenner's IPRA request and failure of the County to provide requested information, Case No. D-132-CV-2017-00062, County Councilor Mary Susan O'Leary falsely accused Mr. Brenner of harassment.

97. As a result of the actions taken by Defendants, Plaintiffs have suffered anxiety and emotional distress. Plaintiffs and their family members do not feel safe in their homes.

98. Plaintiffs have each suffered lost employment opportunities and have suffered a loss of business.

99. Plaintiffs have been retaliated against and had their constitutional rights violated. Plaintiffs continue to experience harassment and retaliation by the Los Alamos County Council, the Los Alamos Police Department; and have been further retaliated against by community members as a result of Defendants' actions.

## FIRST CAUSE OF ACTION:
## 42 U.S.C. 1983 - VIOLATION OF FIRST AMENDMENT

100. Plaintiffs re-allege each and every one of the above paragraphs as if fully set forth herein.

101. The First Amendment of the United States Constitution protects an individual's freedom of expression, freedom of speech and an individual's right to petition his government for redress.

102. Plaintiffs have a right to be free from retaliation for exercising their First Amendment rights.

103. Defendants Los Alamos County and Chrobocinski caused communications by Patrick Brenner to be released outside of adopted procedures and contrary to law, for political purposes and/or to chill Plaintiffs' rights.

104. Defendants released information about and caused Patrick Brenner's confidential ethics complaint to be published in the Los Alamos Daily Post, which is under contract with Defendants Board of County Commissioners for Los Alamos County, solely to harass Mr. Brenner and to chill his right to freedom of speech and of petition. Defendants, by publishing the

confidential ethics complaint of Patrick Brenner to others, violated his right to petition the government for redress guaranteed under the United States and New Mexico Constitutions.

105.   The retaliation against Plaintiff Brenner as alleged above is in contravention of the First Amendment and was committed directly by policymakers of the Los Alamos County; dictated by such policymakers or such subordinates', actions were approved by those with policy making authority for the Los Alamos County. Therefore, the identified retaliation was done pursuant to governmental policy.

106.   Plaintiff Brenner has been subjected, as a result of the recited acts, to deprivations of his rights under color of law and per the customs, policies and usages of the County, of rights, privileges and immunities secured to him by the Constitution and laws of the United States and in particular his right to freedom of speech and to petition his government as protected by the First Amendment to the United States Constitution.

107.   The Los Alamos County Council has engaged in, created or condoned a policy of violating Plaintiff's First Amendment rights and retaliating against Plaintiffs for engaging in their right to petitioner their government. The County has engaged in such conduct in clear violation of law.

108.   The Los Alamos County Council has engaged in, created or condoned a policy of using its authority and position to induce others to violate Plaintiff's First Amendment rights and/or induced other state officials such as the Chief of Police and police officers to retaliate against Plaintiffs for engaging in their right to petitioner their government. The County has engaged in such conduct in clear violation of law.

109.   The Chief of Police and John Doe law enforcement officers have violated Plaintiffs' rights to be free from retaliation for exercising their constitutional rights to petition

their government by undertaking unwarranted contact, control, observation and other law enforcement activity, of Plaintiffs.

110. Chief of Police Dino Sgambellone is directly responsible for the actions of his John Doe officers, in failing to train and supervise such officers so that they do not engage in conduct to violate the constitution rights of those such as Plaintiffs. Chief of Police Dino Sgambellone is directly responsible for the conduct of John/Jane Doe officers in directing them to follow, harass and intimidate Plaintiffs without cause, and to retaliate against them for the exercise of their constitutional rights.

111. Councilor Chrobocinski had used his position to retaliate directly against Plaintiffs by making false statements and improper disclosures, as a result of the exercise of their constitutional rights and has used his position to cause others to retaliate against Plaintiffs and has used his political position to cause those in his control to retaliate against Plaintiffs.

112. As a direct and proximate result of the retaliatory and vindictive acts by Defendants, Plaintiffs have suffered injuries consisting of deprivation of a constitutional right for which Defendants are liable.

113. Defendants are also subject to punitive damages for their conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A. A trial on the merits before a jury;

B. A declaration that the actions of identified Defendants described in this Complaint violated Plaintiffs' Constitutional rights under the First Amendment of the United Sates Constitution and Article II, Section 17 of the New Mexico Constitution;

C. General and specific compensatory damages according to proof;

D.  Punitive damages in such amount as will sufficiently punish defendants for their willful and malicious conduct and as will serve as an example to prevent a repetition of such conduct in the future;

E.  Interest on such damages awarded at the legal rate from the date of judgment until paid;

F.  An order granting Plaintiffs' costs and attorney fees; and

G.  Any and all other relief that may be appropriate as deemed by this Court.

## JURY DEMAND

Plaintiff also requests a jury trial.

Respectfully submitted this 22nd day of May 2018.

WESTERN AGRICULTURE, RESOURCE AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Dori E. Richards, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
dorierichards@gmail.com