IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICK M. BRENNER, and
LISA M. BRENNER,

    Plaintiffs,

vs.                                                  Civ. No. 18-478 KG/KBM

THE BOARD OF COUNTY COMMISSIONERS (COUNCILORS)
FOR THE COUNTY OF LOS ALAMOS;
LOS ALAMOS COUNTY POLICE CHIEF
DINO SGAMBELLONE; LOS ALAMOS COUNTY
POLICE OFFICERS DOE 1 AND 2;
LOS ALAMOS COUNTY COUNCIL MEMBER JAMES CHROBOCINSKI,
LOS ALAMOS COUNTY COUNCIL MEMBER MARY SUSAN O'LEARY
both *individually and in their official capacity*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants' Motion to Dismiss Plaintiff's [sic] Complaint for Failure to State a Claim (Motion to Dismiss), filed June 29, 2018. (Doc. 13). Plaintiffs filed a response on July 17, 2018. (Doc. 16). On July 31, 2018, Defendants the Board of County Commissioners (Councilors) for the County of Los Alamos, Los Alamos County Police Chief Dino Sgambellone, and Los Alamos County Police Officers Doe 1 and 2 filed a reply. (Doc. 20). On August 3, 2018, Defendants Los Alamos County Council members James Chrobocinski and Mary Susan O'Leary filed their reply. (Doc. 21). Having considered the Motion to Dismiss, the accompanying briefing, and the Complaint Due to Deprivation of Civil Rights (Complaint) (Doc. 1), the Court grants the Motion to Dismiss.

*A. The Complaint*

This is a 42 U.S.C. § 1983 civil rights complaint for alleged First Amendment retaliation. Plaintiffs owned a printing business in Los Alamos during the relevant time. They allege that Los Alamos County Council members Chrobocinski and O'Leary primarily sponsored the issuance of a recreation bond (Rec Bond) to be voted on through a special election to be held on May 23, 2017. (Doc. 1) at ¶¶ 12 and 15. Because Plaintiff Patrick Brenner would not support the Rec Bond, Plaintiffs allege Chrobocinski would not support Patrick Brenner's candidacy for a seat on the Los Alamos County Council. *Id.* at ¶ 13. Also, Chrobocinski and O'Leary formed a political action committee (PAC) to support the Rec Bond while Plaintiffs formed a PAC to oppose the Rec Bond. *Id.* at ¶¶ 16 and 19. Plaintiffs subsequently complained to (1) Chrobocinski about his PAC's signage, (2) the New Mexico Secretary of State about campaign practice issues with Chrobocinski and O'Leary's PAC, and (3) Los Alamos County about signage problems associated with Chrobocinski and O'Leary's PAC. *Id.* at ¶¶ 20-31.

On May 15, 2017, at about noon, Patrick Brenner sent an email to all of the Los Alamos County Council informing them "that he would work zealously to defeat the Rec Bond."[1] *Id.* at ¶ 32. Plaintiffs admit that the email communication was "strongly worded" and "used somewhat colorful language." *Id.* at ¶ 62; (Doc. 1-4) at 1. Later that day, at about 8:00 p.m., the Los Alamos Daily Post (LADP) published the email in its online newspaper and on its Facebook page. (Doc. 1) at ¶¶ 38 and 51. The online publication and Facebook posting allegedly resulted

---

[1] Although the Motion to Dismiss quotes the email, Plaintiffs did not attach the email to the Complaint nor did they quote it in the Complaint. In the context of this Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court is restricted to considering only the Complaint and any attached exhibits. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (holding that "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits").

in "hostile and threatening letters to the editor" and "derogatory, defamatory, hurtful, and negative comments…." *Id.*

Patrick Brenner believed the email "would remain private" under the City Charter, "which prevents the disclosure of confidential information outside of compliance with the Inspection of Public Records Act." *Id.* at ¶¶ 33 and 37. Plaintiffs allege that had LADP or the public requested the email through an Inspection of Public Records Act (IPRA) request, it would have taken "days or weeks" to process. *Id*. at ¶ 41.

On the same day Patrick Brenner's email was released to the LADP, Plaintiffs filed an IPRA request with Los Alamos County for documents to determine who provided the email to the LADP. *Id.* at ¶ 43. Los Alamos County did not provide the requested documents. *Id.* at ¶ 44. Chrobocinski allegedly forwarded the email to a "friend" on May 15, 2017. *Id.* at ¶ 45.

Plaintiffs also allege that at about 9:00 p.m. on May 15, 2017, Chrobocinski sent an email to Los Alamos Chief of Police Sgambellone complaining that Patrick Brenner was "unhinged," was "a threat to [Chrobocinski], and others," and "had broken some law." *Id.* at ¶¶ 46 and 47. Plaintiffs further allege that Chrobocinski lied when he reported to Chief of Police Sgambellone that Patrick Brenner "had an outburst at the community development office." *Id.* at ¶ 70.

The next day, on May 16, 2017, Plaintiffs maintain that Chrobocinski "disparaged" them at a League of Women Voters meeting. *Id.* at ¶ 52. Chrobocinski's remarks to the League of Women Voters concerned alleged false statements regarding the signs associated with Chrobocinski and O'Leary's PAC. *Id.*

Also, on May 16, 2017, Plaintiff Lisa Brenner went to the Los Alamos County Council meeting to present a prepared statement. *Id.* at ¶ 54. When she arrived at the council chambers for the public meeting, "multiple police officers" stood outside the chambers. *Id. at ¶* 56.

Plaintiffs allege that two Los Alamos police officers stared at Lisa Brenner, "continually pointed at her and made comments." *Id.* at ¶ 60. Because of this purportedly intimidating police presence, Lisa Brenner did not attend the meeting. *Id.* at ¶ 61.

According to Plaintiffs, Sheriff Lucero confirmed the evening of May 16, 2017, "that the police presence [at the council chamber] was due to Patrick Brenner's email." *Id.* at ¶ 63. Allegedly, Chrobocinski also announced at the council meeting that the "additional security forces" were there "to protect the County Council due to Mr. Brenner's letter." *Id.* at ¶ 65. Plaintiffs further contend that "[p]olice officers, in their official capacities, are not generally present at County Council meetings." *Id.* at ¶ 57.

On June 2, 2017, Plaintiffs filed a complaint in state court against Los Alamos County for violating IPRA and not providing the documents requested on May 15, 2017. *Id.* at ¶ 67. During this litigation, Plaintiffs maintain that O'Leary falsely accused Patrick Brenner of harassment. *Id.* at ¶ 96.

On June 3, 2017, Plaintiffs attended Stephan Brenner's high school graduation. Plaintiffs allege that "[a]t the graduation, a Los Alamos Police officer stood within 10 feet of the family, following Mr. Brenner and his youngest daughter, throughout the event." *Id.* at ¶ 68. A female police officer allegedly followed Patrick Brenner and his daughter down a stairwell and stared at Patrick Brenner. *Id.* at ¶ 69. Purportedly, no other individuals were present. *Id.*

On June 20, 2017, Patrick Brenner filed with the Los Alamos Human Resources Manager an allegedly "confidential" ethics complaint against Chrobocinski and O'Leary. *Id.* at ¶ 74. According to Plaintiffs, ethics "complaints are confidential per the County Charter" in that the Charter "guarantees confidentiality and anonymity in the filing of ethics complaints." *Id.* at ¶¶ 75 and 90.

On June 27, 2017, Patrick Brenner asserts he interviewed for a job with the Republican Party of New Mexico, at which the May 15, 2017, LADP article was brought up. *Id.* at ¶ 76. Patrick Brenner was not offered the job. *Id.* During a job interview in October 2017, Lisa Brenner was asked about the IPRA litigation. *Id.* at ¶ 93.

On July 11, 2017, the Hemphill Law Firm sent a cease and desist letter on behalf of Patrick Brenner to all members of the Los Alamos County Council and others. *Id.* at ¶ 78.

On July 28, 2017, Plaintiffs allege that a reporter from the Los Alamos Monitor called Patrick Brenner about the ethics complaint. *Id.* at ¶ 79. According to Plaintiffs, the Los Alamos County public relations officer informed the reporter about the ethics complaint. *Id.* at ¶ 80. On July 31, 2017, the Los Alamos Monitor published a story about the ethics complaint. *Id.* at ¶ 82.

On August 3, 2017, the LADP also published an article about the ethics complaint. *Id.* at ¶ 84. Plaintiffs allege that the LADP article included false statements by Chrobocinski about Patrick Brenner harassing Chrobocinski and his family with "fake" internet stories and a "fake" Twitter account. *Id.* at ¶ 85; (Doc. 1-6).

On August 30, 2017, the LADP reported on the results of the ethics complaint investigation and included comments by Chrobocinski and O'Leary. (Doc. 1) at ¶ 88. Plaintiffs contend that Patrick Brenner's address was disclosed in the article as part of the ethics complaint report and that his home was vandalized in January 2018. *Id.* at ¶¶ 91 and 94.

Plaintiffs assert that their opposition to the Rec Bond constitutes freedom of expression, free speech and, in effect, a petition for government redress. *Id.* at ¶ 101. *See also* (Doc. 16) at 3. Plaintiffs maintain that Defendants retaliated against them for their opposition to the Rec Bond in violation of the First Amendment. Plaintiffs complain that the retaliatory actions by Defendants caused loss of business, loss of employment opportunities, and other damages like

anxiety, emotional distress, defamation, and "malicious prosecution." (Doc. 1) at 1 and ¶¶ 97 and 98.

B. Standard

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

C. Discussion

The Tenth Circuit explains

> [g]overnment retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective ... a trivial or de minimis injury will not support a retaliatory prosecution claim."

*Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citations omitted).  As to the third element, causation, the United States Supreme Court explained in *Hartman v. Moore*, "official actions adverse to [a person engaging in protected speech] might well be unexceptionable if taken on other grounds, but when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, ... retaliation is subject to recovery as the but-for cause [of the adverse action]." 547 U.S. 250, 256 (2006).

With respect to the first element of Plaintiffs' First Amendment retaliation claim, the Court can reasonably infer from the allegations in the Complaint that Plaintiffs engaged in constitutionally protected activity by opposing the Rec Bond.  The Court, therefore, will address the following alleged retaliatory actions by Defendants to determine if Plaintiffs have stated a plausible claim of First Amendment retaliation for opposing the Rec Bond.

*1. The Release of the May 15, 2017, Email to the LADP*

Plaintiffs assert that the release of the May 15, 2017, email to the LADP was a retaliatory action for their opposition to the Rec Bond.  A Wisconsin district judge considered a similar claimed First Amendment retaliation when a public university released a self-styled "confidential" email to the media.  *Van Ert v. Blank*, 2018 WL 3235559 (W.D. Wisc.).  In addressing the chilling effect of releasing an email to the press, the court noted that where the alleged retaliatory action is a public official's own speech, i.e. a public official's release of an email addressed to the public official, "a public official's conduct 'is generally actionable only in situations of threat, coercion, or intimidation that punishment, sanction, or adverse regulatory action w[ill] immediately follow.'" *Id.* at 5 (quoting *Novoselsky v. Brown*, 822 F.3d 342, 356 (7th Cir. 2016)). Additionally, "[a] plaintiff can show that she suffered an actionable deprivation by alleging that 'a public official ... retaliated by subjecting [her] to embarrassment, humiliation,

7

and emotional distress. But this is a high bar, usually limited to the release of 'highly personal and extremely humiliating details' to the public.'" *Id.* (quoting *Novoselsky*, 822 F.3d at 356).

In this case, Plaintiffs allege that the May 15, 2017, email advised the Los Alamos County Council that Patrick Brenner "would work zealously to defeat the Rec Bond." (Doc. 1) at ¶ 32. Patrick Brenner claims he expected this "confidential information" would not be disclosed "outside of compliance with" IPRA, as provided in the City Charter. *Id.* at ¶ 33. Under IPRA, "[e]very person has a right to inspect public records" such as documents received "on behalf of any public body and relate to public business…." NMSA 1978, § 14-2-1, amended by 2019 New Mexico Laws Ch. 27 (S.B. 118); NMSA 1978, § 14-2-6(G) (2015 Cum. Supp.). Those public records include citizen complaints, like Patrick Brenner's email. *Cox v. New Mexico Dept. of Public Safety*, 2010-NMCA-096, ¶ 11, 148 N.M. 934 (holding that IPRA definition of public records includes citizen complaints).

Plaintiffs contend that an IPRA request by LADP or the public for the May 15, 2017, email would have taken days or weeks to process, implying that the LADP or a member of the public had not requested the email through an IPRA request prior to the LADP's publication of the email on May 15, 2017. (Doc. 1) at ¶ 41. In other words, Plaintiffs assert that someone from the Los Alamos County Council released the email without having gone through an IPRA request, and that such an action violated the City Charter's requirement that confidential information be disclosed through IPRA.

Plaintiffs do not allege any specific facts, other than a general reference to the City Charter and IPRA, to suggest that the May 15, 2017, email was "confidential" and, thus, not subject to release to the LADP on the day Patrick Brenner sent the email. Notably, Plaintiffs openly opposed the Rec Bond through their PAC so their opposition was already known to the

public.  Furthermore, as discussed above, the email is not "confidential" under IPRA and would be subject to release under IPRA as a public document.  Moreover, Plaintiffs do not assert any facts or law to support a contention that public documents subject to disclosure under IPRA can only be disclosed through an IPRA request and not voluntarily by the public body at a time of its choosing.  Indeed, with respect to emails, courts have held "a legitimate expectation of privacy in an email is lost once the email reaches the recipient." *United States v. Barber*, 184 F. Supp. 3d 1013, 1017 (D. Kan. 2016).  Finally, Plaintiffs do not allege any facts to support their conclusory allegation that an IPRA request would take days or weeks to process.

Plaintiffs characterize the email in their Complaint only as "strongly worded" and containing "colorful language."  Without more, Plaintiffs have not alleged facts from which the Court could reasonably infer that the release of the email to the LADP hours after Patrick Brenner sent it to the Los Alamos County Council rises to the level of a threat, coercion or intimidation to punish Plaintiffs, sanction Plaintiffs, or impose an adverse regulatory action against them.  Plaintiffs further do not allege in their Complaint facts to show that the email contained "highly personal and extremely humiliating details" sufficient to meet the high bar for retaliation.   Even viewing the factual allegations in the Complaint as true and in the light most favorable to Plaintiffs, Plaintiffs have failed to allege that the release of the May 15, 2017, email to the LADP was a plausible act of retaliation in violation of the First Amendment.

2. *Police Presence*

a. *Police at the Los Alamos County Council Chamber on May 16, 2017*

Plaintiffs allege that the presence of police officers on May 16, 2017, outside the Los Alamos County Council chamber, constituted retaliation by intimidating Lisa Brenner from giving her statement at the Los Alamos County Council meeting.  Although Plaintiffs allege that

9

the police officers stared at Lisa Brenner and pointed at her, Plaintiffs do not allege that the police officers blocked Lisa Brenner from entering the council chamber nor do they describe what "comments" the police officers purportedly made to Lisa Brenner. Without more, the Court cannot reasonably infer from those allegations of trivial or *de minimis* police action that a person of ordinary firmness would not attend the meeting and make a statement.

Furthermore, Plaintiffs admit that Sheriff Lucero and Chrobocinski stated that the police officers were at the council chamber because of Patrick Brenner's May 15, 2017, email, which Plaintiffs concede was "strongly worded" and contained "colorful language." The tone of the email, and not the opposition to the Rec Bond, therefore, could have motivated the Los Alamos County Council to have a police presence outside of the council meeting. Furthermore, Plaintiffs' allegation that "[p]olice officers, in their official capacity, are not generally at County Council meetings" does not mean that police officers are never at County Council meetings, as in this case. Even viewing these allegations as true and in the light most favorable to Plaintiffs, the Court cannot reasonably infer from these allegations that, but for Plaintiffs' opposition to the Rec Bond, there would not have been a police presence outside of the May 16, 2017, council meeting. In other words, Plaintiffs have not alleged facts to show that the police presence outside of the council chamber was "substantially motivated as a response to" Plaintiffs' opposition to the Rec Bond.

### b. *Police at the June 3, 2017, Graduation*

Although Plaintiffs allege that the police officer at the graduation "had no other reasons to be at the [stairwell] but to observe and intimidate Mr. Brenner," this allegation is conclusory. *See* (Doc. 1) at ¶ 69. Plaintiffs do not allege facts from which the Court could reasonably infer that, but for Plaintiffs' opposition to the Rec Bond, this police officer would not have followed

10

Patrick Brenner and his daughter at the graduation. The police officer could just as well been at the graduation, a public event, to ensure Patrick Brenner was not harassed by members of the public attending the graduation. Viewing the above allegations as true and in the light most favorable to Plaintiffs, the Court could not reasonably infer from those allegations that the police presence at the graduation "was substantially motivated as a response to" Plaintiffs' opposition to the Rec Bond. In sum, Plaintiffs have failed to state a plausible First Amendment retaliation claim based on a police presence outside of the Los Alamos County Council chamber and at the graduation.

> *3. Chrobocinski's Alleged False Statements to the League of Women Voters, the LADP, and to Chief Sgambellone, and O'Leary's Alleged False Accusation of Harassment*

The Court notes that Chrobocinski's alleged false statements to the League of Women Voters, the LADP, and to Chief of Police Sgambellone, and O'Leary's alleged false accusation of harassment constitute speech by public officials. The "First Amendment gives wide berth [to public officials] for vigorous debate, and especially for statements by public officials." *Novoselsky*, 822 F.3d at 356. In fact, "such officials may express critical views of members of the public even when those views are false." *Id.* Put differently,

> "[a]s part of the duties of their office, … officials surely must be expected to be free to speak out to criticize practices, even in a condemnatory fashion, that they might not have the statutory or even constitutional authority to regulate." A public official must be allowed, on occasion, to criticize a private citizen's speech, writings, or other expressive activity and may do so broadly when no threat of sanction is involved. … Unconstitutional retaliation by a public official requires more than criticism or even condemnation.

*Id.* (citation omitted).

Like public officials releasing an email they received to the media, oral statements by public officials only become retaliatory "in situations of 'threat, coercion, or intimidation that

11

punishment, sanction, or adverse regulatory action w[ill] immediately follow.'" *Id.* (citation omitted).

> In certain cases, a public official may also face liability where he retaliated by subjecting an individual to 'embarrassment, humiliation, and emotional distress. But this is a high bar, usually limited to the release of 'highly personal and extremely humiliating details' to the public.'"

*Id.* (citation omitted).

Here, Plaintiffs do not contend that the alleged retaliatory speech by Chrobocinski and O'Leary constituted some kind of "threat, coercion, or intimidation that" they would punish, sanction, or impose an adverse regulatory action on Plaintiffs. Rather, Plaintiffs contend that the retaliatory speech resulted in anxiety, emotional distress, defamation, and "malicious prosecution" leading to vandalism, lost business, and lost employment opportunities. To show that this kind of retaliatory speech is actionable under the First Amendment, Plaintiffs must allege facts showing that the speech by Chrobocinski and O'Leary was "highly personal and extremely humiliating" to Plaintiffs.

First, assuming that the following allegations are true: Chrobocinski made false statements (1) to the League of Women Voters about the PAC signage dispute, (2) to the LADP about Plaintiffs' harassment of him and his family, and (3) in an email to Chief Sgambellone about Patrick Brenner being "unhinged," being a threat to Chrobocinski and others, having "broken some law," and having "an outburst at the community development office," the Court could not reasonably infer from those allegations that Chrobocinski released to the public "highly personal and extremely humiliating details" about Plaintiffs sufficient to meet the high bar of liability for public officials. Second, assuming O'Leary falsely accused Patrick Brenner of harassment during the IPRA litigation, the Court also could not reasonably infer from that allegation that O'Leary released to the public "highly personal and extremely humiliating

12

details" about Patrick Brenner sufficient to meet the high bar of liability for public officials. For the foregoing reasons, Plaintiffs' allegations regarding false statements by Chrobocinski and O'Leary do not state a plausible First Amendment retaliation claim.

*4. Releasing the Ethics Complaint and Report to the Press*

Plaintiffs, further, contend that Los Alamos County, through its public relations officer, retaliated against them in violation of the First Amendment by releasing the ethics complaint and report to the press. According to Plaintiffs, such an ethics complaint is "confidential per the County Charter." (Doc. 1) at ¶ 75. *See also* (Doc. 1) at ¶ 90 ("The Los Alamos County Charter guarantees confidentiality and anonymity in the filing of ethics complaints."). Plaintiffs, however, fail to support this assertion with a citation to the County Charter or to any other law requiring confidentiality of ethics complaints and reports. Consequently, this assertion is conclusory and cannot form the basis for a plausible First Amendment retaliation claim.

*D. Conclusion*

Plaintiffs have failed to state a plausible First Amendment retaliation claim against Defendants. Plaintiffs' Complaint, therefore, is subject to dismissal without prejudice under Rule 12(b)(6).

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiffs' [sic] Complaint for Failure to State a Claim (Doc. 13) is granted and that the Complaint will be dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

13